Not for Publication

## UNITED STATES DISTRICT COURT
## THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MAQBOOL PARACHA; and LUBNA PARACHA | : |
| | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| DARLING INGREDIENTS INC., | : |
| | : |
| Defendant. | : |
| | : |

**Civil Action No.: 20-4902 (ES) (MAH)**

**OPINION**

SALAS, DISTRICT JUDGE

Plaintiffs Maqbool Paracha ("Maqbool") and Lubna Paracha ("Lubna") sue Defendant Darling Ingredients Inc. ("Darling") for workplace injuries Maqbool suffered while repairing a leak on a large industrial fan in one of Darling's plants.  (D.E. No. 12 ("FAC")).  Darling moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6), arguing that the FAC does not sufficiently allege an "intentional wrong" that caused Maqbool's injuries, as is required to overcome the immunity granted to employers by the New Jersey Workers' Compensation Act ("WCA"), N.J.S.A. § 34:15-8.  (D.E. No. 18).  The Court has considered the parties' arguments and decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the following reasons, the Court agrees with Darling and **GRANTS** its motion to dismiss.  The FAC is hereby dismissed **without prejudice**.

## I.    Background

As alleged in the FAC, Maqbool was an assistant plant manager of Darling, a company in the business of collecting and recycling animal processing by-products.  (FAC ¶¶ 3 & 5).  Maqbool

was responsible for overseeing an entire plant located in New Jersey and ensuring plant equipment was sanitary and in good repair.  (*Id.* ¶ 6).  That included maintenance of two high pressure boiler and condenser fans, also known as "Voss Condenser Fans."  (*Id.* ¶¶ 6–7).  The blades on the fans are large, approximately eight feet long, and the fans "are temperature controlled and turn on every time a condenser hit[] sixty-five (65º) degrees."  (*Id.* ¶ 10).  To avoid the fan from automatically turning on—for example, in order to conduct a repair—the "condenser must be completely de-energized."  (*Id.*).  Darling, the FAC admits, requires employees to deenergize the condenser personally, prior to conducting any repairs on the fan.  (*Id.* ¶ 11).  But because the fans are on the roof, and because the control room is not, Darling allegedly "created an alternative method, to avoid delays."  (*Id.* ¶¶ 11–12).  That method allowed an employee to wait on the roof while a second employee deenergized the condenser from the control room and informed the first employee of such through a two-way radio.  (*Id.* ¶¶ 11 & 13).  The alternative method, according to the FAC, made it "substantially certain" that an employee would suffer injury.  (*Id.* ¶ 12).

On April 20, 2018, Maqbool followed that alternative method.  (*Id.* ¶¶ 11 & 13).  "[A]fter receiving clearance from his co-worker over the two-way radio," Maqbool looked for a leak in the fan, during which the condenser hit sixty-five degrees and the fan turned on.  (*Id.* ¶ 13).  The fan struck Maqbool, causing him serious injury.  (*Id.* ¶¶ 13 & 14).

The FAC also alleges that, over the course of several years, "Darling made modifications to the Fan either due to its age or to make the Fan more efficient, despite these modifications putting . . . employees' safety at risk and making severe injury substantially certain."  (*Id.* ¶ 16). Those modifications included (i) disconnecting a vibration switch that automatically shut off the fans after they went off balance; (ii) failing to replace a broken guard that prevented people from getting into the fans, and instead erecting a fence around the fans; and (iii) initiating an electrical

bypass on the fans, which made sure the fans were always turned on and functioning but prevented employees from manually turning them off from the roof.  (*Id.* ¶ 17).

Maqbool further alleges that "Darling safety directors complained about the location of the Fans, the broken guards, the electrical bypass and the vibration switch.  All of which they deemed were threats [to] the safety and welfare of Darling employees."  (*Id.* ¶ 18).  The FAC further claims there "were multiple conversations with Defendant Darling predating Plaintiff's incident by three to four years, requesting that the Fans be replaced and updated due to safety conditions."  (*Id.* ¶ 19).  Finally, the FAC claims that, in connection with Maqbool's accident, the Occupational Safety and Health Administration ("OSHA") cited Darling "for a serious type violation, per 29 CFR 1910.147(a)(2)(ii)(B): requiring Plaintiff to place a part of his body into a condenser fan in order to troubleshoot a vacuum leak when the fan energized injuring the employee during its operation."  (*Id.* ¶ 20).

On March 17, 2020, Maqbool and his wife Lubna sued Darling in the Superior Court of New Jersey, Middlesex County.  (D.E. No. 1, Notice of Removal, ¶ 2).  Maqbool claimed personal injury, and Lubna claimed loss of consortium and related injuries.  (*Id.* Ex. A).  On April 17, Darling removed the case to federal court pursuant to 28 U.S.C. § 1441, invoking diversity jurisdiction under 28 U.S.C. § 1332.  (*Id.* ¶¶ 8–14).  On May 14, Darling moved to the dismiss the complaint.  (D.E. No. 4).  But on June 22, Plaintiffs amended their complaint, filing the FAC and reasserting their state law claims but adding factual allegations.  Darling thereafter filed the present motion to dismiss, arguing it is entitled to immunity under the WCA because the FAC does not plausibly allege that it committed an intentional wrong that caused Maqbool's, and in turn Lubna's, injuries.[1]  The Court agrees.

---

[1]  Plaintiffs also sued Siemens Corporation, the manufacturer of the fans, which has since been terminated from this case.  (D.E. No. 31).

## II.    Legal Standard

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.    Discussion

Enacted in 1911, the WCA "accomplished a 'historic trade-off whereby employees relinquished their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffered injuries by accident arising out of and in the course of employment.'" *Van Dunk v. Reckson Assocs. Realty Corp.*, 45 A.3d 965, 970–71 (N.J. 2012) (quoting *Millison v. E.I. du Pont de Nemours & Co.*, 501 A.2d 505, 512 (N.J. 1985)). "When, by either express or implied agreement, the parties have accepted the provisions of the [WCA], the agreement operates as an employee's surrender of other forms of remedies." *Id.* at 971 (citing N.J.S.A. § 34:15-8).  "In exchange for immunity from liability, the [WCA] requires the employer to provide swift and certain payment, without regard to fault, to employees for workplace injuries." *Id.*  Importantly, the remedies under the WCA are exclusive, unless an

employee's injuries were caused by an "intentional wrong" committed by his or her employer.  *See Mull v. Zeta Consumer Prod.*, 823 A.2d 782, 783 (N.J. 2003).  Indeed, the WCA provides, in pertinent part, that, "[i]f an injury or death is compensable under this article," an employer "shall not be liable to anyone at common law or otherwise on account of such injury or death . . . , except for intentional wrong."  N.J.S.A. § 34:15-8.

The WCA does not itself define "intentional wrong."  But in interpreting that term, the New Jersey Supreme Court has defined two conditions that must be satisfied "in order for an employer's act to lose the cloak of immunity":

> (1) the employer must know that his actions are substantially certain to result in injury or death to the employee, and (2) the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize.

*Laidlow v. Hariton Mach. Co.*, 790 A.2d 884, 894 (N.J. 2002); *accord Van Dunk*, 45 A.3d at 973. The first condition is the "conduct prong," and the second condition is the "context prong."  *See Van Dunk*, 45 A.3d at 973.  These prongs, the New Jersey Supreme Court has said, present "formidable" standards.  *Id.* at 966.

With respect to the conduct prong, "[m]ere knowledge by an employer that a workplace is dangerous does not equate to an intentional wrong."  *Id.* at 978.  In other words, negligent or reckless conduct does not satisfy the conduct prong.  *See Millison*, 501 A.2d at 514.  Instead, "[a]n intentional wrong must amount to a virtual certainty that bodily injury or death will result."  *Van Dunk*, 45 A.3d at 978.  In determining whether that was the case, the fact finder must consider the totality of the circumstances, including the circumstances of the accident, the employer's involvement in it, prior accidents or close calls involving the same or similar circumstances, previous complaints of employees, defective safety devices and the employer's knowledge of such

defects, safety devices that had been modified as more dangerous to enhance profit, past OSHA citations for same or similar conduct, and the employer's purposeful deceit of OSHA regulators. *Id.* at 978–79 (collecting cases). Ultimately, and it bears emphasis, these factors are to determine whether there was a virtual certainty of injury, not whether there was an "exceptional wrong," a "reckless act," or "gross negligence." *Id.* at 979.

The context prong is "related" to, and often "overlap[s] to a great degree" with, the conduct prong. *Id.* at 979. Indeed, "the same facts and circumstances generally will be relevant to both prongs." *Crippen v. Cent. Jersey Concrete Pipe Co.*, 823 A.2d 789, 796 (2003). However, the context prong presents a question of law for a court, "as the gatekeeper policing the [WCA's] exclusivity requirement," to determine whether "an employee's injury and the circumstances in which the injury is inflicted are 'plainly beyond anything the legislature could have contemplated as entitling the employee to recover only under the [WCA].'" *Van Dunk*, 45 A.3d at 980 (quoting *Millison*, 501 A.2d at 514).

Darling argues that the FAC does not contain sufficient facts, taken as true, to support that it engaged in an intentional wrong. (D.E. No. 18-3, Moving Brief, at 13). Even accepting that Darling created an alternative method for deenergizing the condenser,[2] Darling argues that "use of this purported alternate procedure does not amount to an intentional wrong by Darling, with virtual certainty that injury or death would occur." (*Id.* at 13). "Even if [Maqbool] relied on a co-worker in the control room to de-energize the fan rather than locking out/tagging out the machine himself as required, and the co-worker did so improperly or failed to act at all, 'the action of a co-worker who knew the safety procedures but carelessly ignored them . . . is precisely the type of conduct which is addressed by the [WCA] remedy as a matter of course on a daily basis.'" (*Id.* (quoting

---

[2]    Darling resists this conclusion, but the Court must accept it as true for purposes of this motion.

*Calavano v. Fed. Plastics Corp.*, No. A-0353-09T1, 2010 WL 3257784, at *6 (N.J. Super. Ct. App. Div. Aug. 18, 2010))).  Moreover, Darling argues that the alleged modifications and defects, both to the condenser and other safety devices, do not change that conclusion because they had nothing to do with the manner in which Maqbool was injured and nevertheless do not meet the substantial certainty standard.  (*Id.* at 14–18).  Finally, Darling argues that a past OSHA citation— let alone a subsequent one—"does not equate to an intentional wrong."  (*Id.* at 18).

Plaintiffs respond that the FAC "offer[s] facts that show how [Darling] could be liable simply based upon the pleadings."  (D.E. No. 21, Opposition Brief, at 8).  That is so, according to Plaintiffs, by virtue of their pleading that Darling "had a duty to maintain the fans in proper working order," failed to do so, "made substantial modifications to the fans and the area, knowing that the modifications could make the fans dangerous," and "therefore caus[ed] injury to [Maqbool]."  (*Id.*).  In addition, Plaintiffs assert that "Darling had prior complaints and accidents preceding this incident reported and made part of the OSHA log," "was cited for violations by OSHA regarding the lack of safety guards in the condenser fans in violation of 29 C.F.R. 1910.212 (a)(3)(ii)," and "never attempted to rectify the issue nor create any preventative measures until after the incident that injured [Maqbool]."  (*Id.* at 13).  Moreover, Plaintiffs argue that a jury could reasonably find that the alternative method created by Darling, whereby the employee working on the fan relies on a second employee to turn off the condenser, was an intentional wrong because it placed employees "in a situation in which severe injury was substantially certain."  (*Id.* at 9 (citing FAC ¶ 12)).

The Court agrees with Darling.  The FAC fails to plausibly allege that Darling committed an intentional wrong—an act that was virtually certain to cause injury to one of its employees.  For starters, many of the allegations in the FAC bear little, if any, relevance to Plaintiffs' claims.  Their

allegations concerning the safety guard and vibration switch are irrelevant because the FAC does not allege, much less plausibly allege, that the absence of those devices caused the accident.  *See Mechin v. Carquest Corp.*, No. 07-5824, 2010 WL 3259808, at *9 (D.N.J. Aug. 17, 2010) (Salas, M.J.) ("The allegation that the work site was unclean is irrelevant since there is no allegation that a lack of cleanliness caused this accident.").  Indeed, the FAC alleges that the accident occurred because a co-worker negligently cleared Maqbool to enter the fan even though the condenser was not deenergized.  Similarly, while Plaintiffs allege in their opposition brief that Darling received prior OSHA citations regarding the lack of a safety guard, the FAC does not allege that the existence of a safety guard would have prevented the accident.  More fundamentally, the purported OSHA violations are not pled in the FAC, and "[i]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (quoting *Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

The FAC merely alleges that Darling (i) prevented employees from turning off the fans while on the roof; (ii) permitted employees to rely on one another to deenergize the condenser prior to working on the fan; (iii) received complaints from employees in the preceding years about the location of the fans and their inability to manually turn them off while on the roof; and (iv) received an OSHA citation for Maqbool's accident.  These facts, taken as true, do not meet the "formidable" standard for an intentional wrong under the WCA.  *See Van Dunk*, 45 A.3d at 966.

As for the conduct prong, the FAC does not explain *how* these facts make it such that the alternative method to deenergizing the condensers created a virtual certainty of injury.  Rather, the FAC offers a legal conclusion that the alternative method made "severe injury substantially certain."  (FAC ¶ 12).  That legal conclusion is not entitled to the presumption of truth.  *See Iqbal*,

8

556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Notably, Plaintiffs appear not to object to the procedure whereby the employee fixing the fan also deenergizes the condenser.  And there are no facts pled in the FAC suggesting that procedure is any safer than the alternative.  This accident occurred because Maqbool's co-worker cleared him to enter the fan without correctly deenergizing the condenser.  But the FAC does not suggest an employee would be more successful in deenergizing the condenser by doing so himself.  Nor does it allege workplace conditions would be safer if an employee turned off the fan from the roof as opposed to the control room.  Moreover, while employees apparently complained about the location of the fans and their inability to manually turn them off from the roof, the FAC does not indicate the basis of their complaints.  The FAC does not allege the occurrence of past accidents or close calls involving the same or similar conduct, nor does it allege past OSHA citations regarding the alternative method.  Although the FAC alleges that Darling received an OSHA citation for Maqbool's accident, that subsequent citation is insufficient to support a finding of intentional wrong.  *Van Dunk*, 45 A.3d at 977–78 ("We decline to find that every willful OSHA violation constitutes an intentional wrong for purposes of the Act.").

As for the context prong, the FAC contains no facts concerning the type of danger workers at Darling experience daily.  The FAC claims the accident occurred because of the negligent act of a co-worker.  A co-worker's negligent act is, as one New Jersey court has observed, a well-known risk in working in a plant or factory.  *See Calavano*, 2010 WL 3257784, at *6 ("Nevertheless, the record strongly indicates that plaintiff's injury was caused by the action of a co-worker who knew the safety procedures but carelessly ignored them.  This is precisely the type

of conduct which is addressed by the [WCA] remedy as a matter of course on a daily basis.").  The FAC does not support a contrary conclusion.

**IV.**    <u>**Conclusion**</u>

Based on the foregoing, the Court **GRANTS** the motion to dismiss the FAC (D.E. No. 18). The FAC is dismissed **without prejudice**.  An appropriate Order will be entered.


<u>/s/Esther Salas</u>

Dated: March 19, 2021                                      Esther Salas, U.S.D.J.